**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 22-cv-01000-RM

R2 MEDICAL CLINIC, P.C., a Colorado corporation,

      Plaintiff,

v.

DANIEL LANN, M.D., an individual,
DENVER STRETCH INSTITUTE, INC., a Colorado corporation d/b/a Denver Sports Recovery,
KATIE MCCONNELL, an individual,
DAVID RADAY, JR., an individual,
OPTIMIZATION CLINICS, LLC, a Colorado limited liability corporation, and
DOES 1-10,

      Defendants.

---

## ORDER

---

      Before the Court is Plaintiff's Motion for Ex Parte Temporary Restraining Order and Preliminary and Permanent Injunctive Relief.  (ECF No. 2.)  The Court addresses, at this time, only the request for a temporary restraining order ("TRO").  The Motion is granted in part and denied in part for the reasons below.

**I.**      **LEGAL STANDARDS**

      To obtain a TRO or injunctive relief in any other form, a plaintiff must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest."  *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281

(10th Cir. 2016) (quotation omitted).  A TRO is an extraordinary remedy, and therefore the plaintiff must demonstrate a right to relief that is clear and unequivocal.  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).  The fundamental purpose of preliminary injunctive relief is to preserve the relative positions of the parties until a trial on the merits can be held.  *Id.*  A TRO may issue without notice to the opposing party, but its duration is limited to fourteen days.  *See* Fed. R. Civ. P. 65(b)(1)-(2).

## II.    BACKGROUND

According to the Verified Complaint, Plaintiff provides health optimization services such as hormone therapies, nutrition, supplementation, and other anti-aging treatments to patients at clinics in Arvada, Aurora, Denver, and Greeley.  (ECF No. 1, ¶¶ 4, 14.)  From January 2021 to April 2022, Defendants Raday and McConnell were contracted to work as medical assistants at the clinics.[1]  (*Id.* at ¶¶ 7, 8.)  Plaintiff alleges that these Defendants conspired with one another as well as the other Defendants to steal Plaintiff's patients.  (*Id.* at 2.)

Defendants Raday and McConnell signed the leases of the Arvada and Greeley clinics. (*Id.* at ¶ 14.)  On April 1, 2022, they each resigned from their positions with Plaintiff and announced that they would work for another clinic, directly competing with Plaintiff.  (*Id.* at ¶¶ 5, 6, 26.)  Presumably because they signed the leases, Defendants Raday and McConnell initially demanded that Plaintiff leave the Arvada and Greeley clinics.  (*Id.* at ¶¶ 32, 33.)  Though they later retracted those demands, Plaintiff alleges it has effectively been locked out of the Greeley clinic and was forced to cancel appointments with six patients.  (*Id.* at ¶¶ 33, 34.)

Plaintiff further alleges that in the month before announcing their resignations,

---

[1] The full relationship between Plaintiff and these Defendants has aspects which do not affect the outcome here but which are, nevertheless, uncertain.

Defendants Raday and McConnell facilitated the stealing of Plaintiff's patients by not scheduling them for monthly follow-up appointments, as they had routinely done before.  (*Id.* at ¶ 23.) Plaintiff also alleges that Defendants Raday and McConnell improperly accessed its computer systems to obtain confidential medical records and patient contact information, which was also used to facilitate the stealing of Plaintiff's patients.  (*Id.* at ¶¶ 30, 31.)

In the Verified Complaint, Plaintiff asserts a claim for violation of the Stored Communications Act ("SCA") against Defendants Raday and McConnell.  Plaintiff also asserts claims for violation of the Defend Trade Secrets Act ("DTSA"), violation of the Colorado Uniform Trade Secrets Act ("CUTSA"), civil conspiracy to misappropriate trade secrets, tortious interference with contract and business expectancy, and accounting and constructive trust against all Defendants.

In its TRO Motion, Plaintiff seeks an order enjoining Defendants from misappropriating its confidential patient information and requiring them to provide it access to the Greeley clinic. Plaintiff also seeks a constructive trust.

## III.   ANALYSIS

### A.   Substantial Likelihood of Success on the Merits

#### 1.   SCA Claim

Plaintiff argues it has a reasonable probability of success on its SCA claim against Defendants Raday and McConnell because they exceeded their authorization to access its computer systems when they used confidential patient medical information for Defendants' collective benefit.  *See* 29 U.S.C. § 2701 ("Unlawful access to stored communications").  Based on the allegations in the Verified Complaint, the Court agrees.  Although Plaintiff has not produced the contracts that governed its relationship with these Defendants, the circumstances

strongly suggest that they had a duty to access Plaintiff's computer systems for the exclusive purpose of providing services to Plaintiff's patients and to maintain the confidentiality of patient medical information. Accepting the allegations as true for present purposes, the Court finds Plaintiff is likely to succeed in establishing that these Defendants breached that duty.

2.      DTSA and CUTSA Claims

Plaintiff argues it is likely to succeed on its trade secrets claims because it took appropriate measures to protect the confidential patient medical information that Defendants Raday and McConnell provided to Defendants. *See* 18 U.S.C. § 1839(3) (defining "trade secret"); 18 U.S.C. § 1839(5) (defining "misappropriation"); Colo. Rev. Stat. § 7-74-102 (defining "[m]isappropriation). Again, based on the circumstances alleged in the Verified Complaint, the Court agrees that Plaintiff has a reasonable probability of succeeding on these claims by proving that Defendants acquired such information by improper means.

3.      Civil Conspiracy and Tortious Interference

Plaintiff argues it is also likely to succeed on its civil conspiracy and tortious interference claims, as it was no secret Defendants Raday and McConnell intended to work together and directly compete with Plaintiff after resigning. According to the Verified Complaint, they furthered their alleged scheme to steal Plaintiff's patients when, in the month before they resigned, they stopped scheduling patients for follow-up appointments, conduct that was both intentional and improper. The Court agrees that Plaintiff has a reasonable probability of success on these claims as well.

However, to the extent these claims are premised on conduct by Defendants Raday and McConnell predating their resignations, Defendants' entitlement to a TRO based on these claims is far from clear and unequivocal at this stage of the case. Further, as discussed below, Plaintiff

has not shown it is entitled to a TRO based on allegations it was locked out of the Greeley clinic.

Accordingly, these claims do not enlarge the relief to which Plaintiff is entitled beyond what the

Court has already determined to be appropriate in connection with the SCA and trade secrets

claims.

                    4.      Accounting and Constructive Trust Claim

        Plaintiff also argues it is likely to succeed on this claim because Defendants have

acquired revenue through fraudulent means.  However, Plaintiff has made no showing or

argument that Defendants could be in a position of not being able to pay any judgment finally

awarded against them.  On the current record, the Court declines to order an accounting or

constructive trust.

        **B.      Irreparable Harm**

        The Court agrees that Plaintiff may suffer irreparable harm if Defendants are not enjoined

from any further use of the confidential patient medical information at the center of this case.

But the Court disagrees that Plaintiff has shown irreparable harm which is connected to requests

for lawful relief with respect to its being locked out of the Greeley clinic.  Plaintiff has not

produced the underlying leases or explained how it could have the right to occupy premises

leased in other people's names.  It has not alleged or shown that it is entitled to any equipment,

documents, or other items located at the clinic.  Nor has it produced the underlying contracts to

explain any contractual obligations Defendants could have had toward Plaintiff prior to or

following their resignations.  Indeed, despite Plaintiff's contention that Defendants Raday and

McConnell were contractors, no breach of contract claims are yet being asserted in this case.

Thus, with the case in its current posture, the Court cannot agree that Plaintiff will suffer

irreparable harm justifying TRO relief if it remains locked out of the Greeley clinic pending

further resolution of the claims in this case.  Put another way, on the current record the Court will

not order Defendants or a lessor or landlord to provide its space to Plaintiff where Plaintiff

presents nothing indicating it is lawfully entitled to such space.

### C.    Balance of Harms

With respect to this element, Plaintiff argues that the TRO it seeks would only prohibit

Defendants from misusing its confidential patient information to contact and treat Plaintiff's

patients.  At this stage, and for the reasons explained in the discussion of irreparable harm, the

Court discerns no right to a TRO due to its loss of access to the Greeley clinic.

### D.    Public Interest

The Court finds that this element weighs in Plaintiff's favor, at least with respect to the

confidential patient information at issue.  But again, the relief being granted at this stage does not

include ordering Plaintiff be allowed to access the Greeley clinic or making any determinations

as to the rights of the parties in those premises.

## IV.    CONCLUSION

Accordingly, the Court finds the requirements for a limited ex parte TRO are satisfied

and hereby ORDERS as follows:

(1)    Defendants are ORDERED to return, by noon on May 5, 2022, all of Plaintiff's

confidential patient information, including but not limited to patient contact

information, medical reports, treatment plans, lab tests, and any other information

they acquired from Plaintiff's computer systems, whether in electronic or hard

copy format;

(2)    Defendants are ENJOINED from using Plaintiff's confidential patient information

to contact any new patients or to treat any of Plaintiff's former patients;

(3)     Plaintiff, through its counsel, shall promptly SERVE a true and correct copy of this Order as well as its Verified Complaint on Defendants and file proof of service with this Court;

(4)     Plaintiff shall FILE with the Clerk of this Court an undertaking in the from of a bond, certified check, bank check, or cash in the amount of $5,000 no later than April 29, 2022, to secure the payment of such costs and damages not to exceed such sum as may be suffered or sustained by any party who is found to be wrongfully restrained hereby;

(5)     a preliminary injunction hearing is set for May 6, 2022, at 1 p.m. in Courtroom A601 before Judge Raymond P. Moore; and

(6)     this TRO expires after fourteen days, *see* Fed. R. Civ. P. 65(b)(2), unless the Court extends it for good cause shown or it is subject to continuation by agreement of the parties.

The request for a TRO is otherwise DENIED.

DATED this 27th day of April, 2022, at 11:20 a.m.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge